STEVENSON *v.* DETROIT UNITED RAILWAY.

NEGLIGENCE—STREET RAILWAYS—HIGHWAYS AND STREETS—CON-
TRIBUTORY NEGLIGENCE—AUTOMOBILES.

It was such negligence on the part of a driver of an automo-
bile, as to preclude recovery in an action for injuries, where
plaintiff's testimony showed that his wife, who was driving
the automobile, stopped at the sidewalk line before crossing
defendant's street car track, observed that the street car was
about 250 feet distant, and, turning the corner, drove her
machine upon the track in front of the moving car without
again looking, and was struck while she was traveling along
the car track after going about 80 feet from the place where
she stopped, where it appeared also that she could have stopped
her automobile almost instantly or could have driven along
beside the car track.

Error to Wayne; Rohnert, J. Submitted June 20,
1911. (Docket No. 124.) Decided September 29, 1911.

Case by Richard Stevenson against the Detroit United
Railway for injuries to plaintiff's wife and automobile.
A judgment for defendant on a verdict directed by the
court is reviewed by plaintiff on writ of error. Affirmed.

*May & Dingeman,* for appellant.

*Corliss, Leete & Joslyn (Frederic T. Harward,* of
counsel), for appellee.

BROOKE, J. Plaintiff brings his action against defend-
ant to recover damages resulting from the alleged negli-
gent operation of one of its cars. A verdict having been
directed in favor of defendant, plaintiff has removed the
case to this court for review upon writ of error.

Helen avenue runs north and south, and Kercheval
avenue east and west, in the city of Detroit. Upon
Kercheval avenue defendant operates a double-track
street railway, the northerly track carrying west-bound

cars and the southerly track those going in an easterly direction. The accident occurred near the intersection of these two streets. Plaintiff had lived on Helen avenue at the corner of Kercheval for six years prior to the date of the accident. On that day plaintiff's wife was driving south on Helen avenue in an electric coupé, in company with two children. She testified that, when she reached the sidewalk line on the north side of Kercheval avenue, she stopped her car and looked both ways, that she saw a car coming from the west, a little more than a block, or about 270 feet, away. Upon cross-examination, she described her conduct as follows:

"*Q.* And when you saw this car you had no fear?

"*A.* No, sir; I had no fear whatever.

"*Q.* You saw the car coming, moving then—was the car moving?

"*A.* Yes; it was.

"*Q.* Was not standing still?

"*A.* No, sir; it was moving.

"*Q.* If you had no fear, you did not look again until you were hit?

"*A.* I never looked again. I was sure I had plenty of time.

"*Q.* You went about how many feet, how far had you gone before you were hit?

"*A.* I had turned the corner.

"*Q.* And you had gone down onto the north-bound track?

"*A.* Yes.

"*Q.* You knew that the cars went east on the south-bound track?

"*A.* Yes.

"*Q.* You had seen them coming? One had gone by just before?

"*A.* Yes.

"*Q.* You went right on the track?

"*A.* Yes.

"*Q.* You did not look again?

"*A.* No, sir; I did not look again.

"*Q.* How far had you gone from where Helen runs into Kercheval? How far had your car gone from the intersection of Helen and Kercheval before the car hit you? You had gone some distance?

"*A.* I was making the turn on Kercheval.

"*Q.* You had gone down here, and had gone some distance before you were hit?

"*A.* Yes; but I was not on that side. I was crossing the track.

"*Q.* Yes; you were on the south track?

"*A.* Yes; just about on that track, on that track.

"*Q.* You had gone how many feet from Helen avenue when you were crossing that track? Was it half a block?

"*A.* Not that far.

"*Q.* 100 feet?

"*A.* I can't say. I was about to the middle of that house on the northeast corner.

"*Q.* You came down here and stopped and looked, and you did not see anything. Then you turned around and were going east. Did you cross diagonally?

"*A.* I got across, I think. I made a longer turn than that.

"*Q.* What I am getting at is, how far had you—how far do you think you ran your car after you looked, before you were hit—200 or 300 feet?

"*A.* Yes; about that.

"*Q.* You made a turn across the track?

"*A.* Yes.

"*Q.* You ran 200 or 300 feet, and then you were hit?

"*A.* Yes.

"*Q.* From the point where you looked?

"*A.* Yes.

"*Q.* You went 200 or 300 feet?

"*A.* I think so.

"*Q.* You heard the bell ring?

"*A.* Yes; I heard the bell ring, and then the crash. When I heard the bell ring, I did not have any fear.

"*Q.* You did not look around then?

"*A.* No; I did not look. I had no fear when I heard the bell.

"*Q.* You did not look around there then?

"*A.* No, sir.

"*Q.* You thought you were all right?

"*A.* Yes; that is where I lived, that corner. I had been around there almost every day since I had the car."

After stating that she was running her car at a speed of eight miles per hour, she testified further:

"*Q.* How quick could you stop this vehicle when it

was going at that rate, how quick could you stop your machine when it was going at that rate?

"*A.* I think I could stop almost instantly. If I had known the car was coming at the rate that it was coming, I would not have crossed.

"*Q.* If you had known the car was directly behind you, you could have stopped your car instantly, before you got on the track?

"*A.* I think so."

Henry Connor, the only other witness to the accident sworn by the plaintiff, testified that he did not see the coupé stop at the corner, that it made a long turn around the corner, and entered the south or east-bound track about 25 feet in front of the approaching car.

Mrs. Stevenson was evidently in error in testifying that after stopping she drove 200 or 300 feet before she was hit by the car. Actual measurements show that Kercheval avenue is 80 feet wide, and that the distance from the center of Helen avenue to the point on Kercheval where the collision occurred is 66½ feet. If she had driven her car at right angles, therefore, she would have traveled one-half of 80 feet plus 66½ feet, or about a total of 106½ feet, after she looked until she was struck. Deducting from this distance 25 feet, the distance she was in front of the car when she entered the east-bound track, we find that, after stopping, looking, and seeing the approaching car, she drove her machine approximately 81½ feet towards, and finally upon, the track carrying the approaching car. She drove this entire distance at a slow speed in a vehicle capable of being instantly stopped, and entered upon the track in front of the approaching car without again assuring herself that it was safe to do so. She testified that there were no cars approaching on the north or west-bound track, and that there was nothing to prevent her from running along in the north track had she known the car was near. She did know a car was approaching, and a single glance just before she entered upon the south track would have shown her that it was within 25 feet of her, and running at full speed. She could have then

stopped her car or proceeded east on the north track until defendant's car had passed.

Under the facts in this case disclosed by plaintiff's testimony, we must hold that the driver of the automobile was guilty of such negligence as to preclude recovery. *Gardner* v. *Railroad Co.*, 97 Mich. 240 (56 N. W. 603); *McGee* v. *Railway*, 102 Mich. 107 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Hine* v. *Railway*, 115 Mich. 204 (73 N. W. 116); *Doherty* v. *Railway Co.*, 118 Mich. 211 (76 N. W. 377, 80 N. W. 36); *McCarthy* v. *Railway Co.*, 120 Mich. 400 (79 N. W. 631); *Bennett* v. *Railway Co.*, 123 Mich. 694 (82 N. W. 518); *Merritt* v. *Foote*, 128 Mich. 367 (87 N. W. 262); *Manos* v. *Railway*[1] (Mich.), 130 N. W. 664.

The judgment is affirmed.

OSTRANDER, C. J., and MOORE, MCALVAY, and BLAIR, JJ., concurred.

---

[1] Not officially reported. Rehearing pending.