HENDERSON v. DETROIT CITIZENS' STREET-RAILWAY CO.

1. TRIAL—INSTRUCTIONS—EVIDENCE.

An instruction in an action for personal injuries that " if the jury believe the plaintiff's side of the case and the plaintiff's witnesses, taking them in sides, plaintiff has made out a case," is prejudicial to defendant, where many of the facts testified to by plaintiff's witnesses might be true, and yet no liability exist.

2. INJURY TO INFANT—CONTRIBUTORY NEGLIGENCE.

A boy who has sufficient intelligence to appreciate the danger of running in front of a street car, and has in mind the necessity of taking precautions, is guilty of contributory negligence in running in front of a car, even though he did not fully possess the intelligence of an adult.

3. SAME.

> Where, in an action by a father for damages resulting to
> him from the negligent running down of his eight-year-old
> son by a street car, the father testified that the boy was per-
> fectly competent to take care of himself upon the street, and
> the boy himself showed by his testimony that he possessed
> sufficient intelligence to appreciate the danger in crossing
> the tracks, it was error to submit the question of his capacity
> in this respect to the jury.

4. NEGLIGENCE—INSTRUCTIONS.

> It is error for the court to submit to the jury an action for
> personal injuries under instructions which permit them to
> find the defendant negligent upon grounds which are nega-
> tived by the undisputed evidence.

Error to Wayne; Donovan, J.   Submitted October 12,
1897.   Decided March 22, 1898.

Case by Henry Henderson against the Detroit Citizens'
Street-Railway Company to recover for expenses incurred in
caring for his son, alleged to have been injured through
defendant's negligence.   From a judgment for plaintiff,
defendant brings error.   Reversed.

*Brennan, Donnelly & Van De Mark* and *Bernard B.
Selling,* for appellant.

*John Galloway* (*Edwin Henderson,* of counsel), for
appellee.

MONTGOMERY, J.   Plaintiff's son, Malcolm Henderson,
was injured by contact with one of the cars of defendant.
The plaintiff brings this action to recover for expenses in-
curred in nursing and caring for his son, and for medical
attendance, medicines, etc.   A verdict was recovered of
$203.50, upon which judgment was entered, and defend-
ant brings error.

The accident occurred on Michigan avenue, near its
intersection with Humboldt avenue.   At this place the de-
fendant has double tracks.   The car which struck plain-

tiff's son was going west. The testimony is conflicting as to whether it met an east-bound car at this point. Some of the testimony tended to show that the boy ran or walked past the rear of the east-bound car, and was immediately struck by the west-bound car; and other of the testimony tended to show that he went behind a coal wagon standing on the track, and came in collision with the west-bound car. The boy testified that he looked for the cars to see if they were coming, for the reason that he knew, if they did strike him, he would get hurt; that he went behind one car, and was struck by the other; that there was a coal wagon right on the track; that he just saw it, and looked that way to see if the car was coming; that he turned right behind the wagon, and did not run behind a car at all, and ran into the fender of the car that was going west; that, just as soon as he went behind the wagon, he was struck by the car; that he did not get across the track, and ran right into the fender; that he did not see the fender out from behind the wagon, because he did not look for that; that he looked to see if the car was coming. Again, on redirect examination he testified that he did see the car which did not strike him; that he ran right behind the coal wagon, and saw only the one car which did not strike him.

Frank Almas, a witness for the plaintiff, testified that he stood near the scene of the accident; that the boy was from 30 to 50 feet from him when he started to cross the street; that, when the boy started to cross the street, he was running, and ran up to the time he was struck; that he saw the car the first time when it was about 25 feet from Humboldt avenue, and thought, when he saw the boy running across the street, he was bound to be struck by the car when he saw the car coming so fast; that there was nothing to prevent the boy seeing the car if he had looked; that he could see it as soon as witness could; that the boy ran right into the car, or the car ran into him, witness could not say which, but, after the accident, he was lying between the double tracks; that he might have

run against the car. Maud Wilson, a witness for the plaintiff, testified that she saw the car strike the boy, and throw him to the west; that she did not hear any gong ringing; that the boy was walking across the street. On cross-examination she testified that the boy passed behind a car going down town, maybe three or four feet, maybe not so far, and he was struck by the other car as he got past the car going down town; that the car which struck him was not any distance away when he appeared upon the track; that she thinks the side of the sign struck him. Edward Siebert testified that the boy was struck by the end of the car, but that he could not say whether the fender struck him or not; that he struck the front part of the car, and bounced off, and fell on the ground. On cross-examination he testified that the boy did not completely get on the track of the west-bound car when he was struck by it; that he could not say whether he walked into the car or not; that, in his judgment, the car ran into him; that he was not over two feet on the track when he was struck, but that he was struck in pretty near the corner of the car. Joseph Gomersall, a witness for the plaintiff, testified that he was driving a coal wagon west on Michigan avenue; that he was in front of the blacksmith shop on the east side of Humboldt avenue when the accident happened; that he saw no other coal wagon around there; that he came onto Michigan avenue from Fifteenth street, and was traveling at a pretty good rate of speed; that he had just reached the east crossing of Michigan avenue and Humboldt, and the west-bound car went down, and up came the east-bound; that he saw the boy leave the sidewalk, and the west-bound car came by, and he could not see the car strike the boy, because he was on the wrong side for that. On cross-examination this witness testified that the east-bound car was already half a block away when the boy stepped upon the track on which it was traveling; that it was a good half block away; that the witness could

not say when the east and west bound cars passed each other, as they were both behind him when they passed.

The above, with other testimony showing that the car in question was traveling at an unusual rate of speed, and tending to show that the gong was not sounded, comprised the testimony offered by the plaintiff bearing on the *res gestæ*. The plaintiff also testified that he had frequently cautioned his son always to be careful, and look both ways, before he attempted to cross the street, and that the boy must have comprehended what he said, and that, in his judgment, he was perfectly competent to take care of himself on the street. Defendant offered testimony showing a somewhat different state of facts, but we deem it unnecessary to quote the testimony at any length, as the questions raised depend upon the case as made by plaintiff's testimony.

The defendant preferred the following requests:

"1. Under the pleadings and proofs, the plaintiff cannot recover.

"2. It is entirely immaterial in this case at what rate of speed the car was going, for the undisputed testimony of all the witnesses is that, after the boy approached the car, it was impossible to have stopped it before the collision occurred."

"5. If you find that Malcolm Henderson, the boy who was hurt, had been warned repeatedly by his father of the danger of crossing the car tracks on Michigan avenue without looking to see whether a street car was coming, and that the boy himself appreciated the danger of going upon the tracks of the defendant, then your verdict must be for the defendant, and be no cause of action."

"8. If you find that Malcolm Henderson ran from behind a coal wagon or behind a car directly into the fender or side of defendant's car, your verdict must be for the defendant."

The court refused to give the first, second, and last of these requests, and modified the fifth by adding:

"That is, if he was a grown person under the circumstances, or if he had the intelligence of a grown person fully."

Assignments of error are based upon the refusal of the defendant's several requests, the modification of the fifth request, and the instructions of the court given on its own motion.

Error is assigned on that portion of the general charge which reads: "If you believe the plaintiff's side of the case and the plaintiff's witnesses, taking them in sides now, then the plaintiff has made out a case." This method of submitting a case, always dangerous, was obviously damaging to the defendant in this case, for, in my view of the case, many of the facts testified to by plaintiff's witnesses might be true, and yet no liability exist.

We also think the modification of the fifth request was error. The circuit judge evidently had in his mind the case of *Baker* v. *Railroad Co.*, 68 Mich. 90, which case certainly goes to the extreme limit in permitting recovery by a child somewhat younger than the son of the plaintiff in the present case; but the court in that case held that the question of contributory negligence was for the jury for the reason that, under the facts of that case, it was for the jury to determine whether the lad had such judgment and such comprehension as to enable him to appreciate the danger, and subject him to the consequences of negligence if he failed to use his reason and senses in an effort to avoid it. But the instruction of the learned circuit judge in this case relieved the jury of the duty of passing on the question of whether plaintiff's son had such appreciation of the danger as to render him subject to the consequences for a failure to use his reason and senses in an effort to avoid it. The modification of the request in question was by adding: "That is, if he was a grown person under the circumstances, or if he had the intelligence of a grown person fully." It is hardly necessary to say that this test is too liberal. If the boy had sufficient intelligence to appreciate the danger, and had in mind the necessity of taking precautions, it is not necessary that he should have had the intelligence of an adult fully.

Another instruction is objected to, which was as follows:

"This negligence must consist of either failing to give the proper warning of the approach of the car, or of failure to stop the car after the perilous position of the son of the plaintiff was discovered by the motorman, if he could with reasonable care discover it. That is qualified a little, and this I leave to the jury: Whether it was possible, by diligent endeavors of the motorman, to stop the car after the boy came from behind the coal wagon, or whatever he did after he came upon the track, or we will say within reach."

We think, upon the case made by the plaintiff, this instruction was misleading. There was no evidence which would have justified the jury in finding, or which tended in the slightest degree to show, that the position of this boy on the track was discovered in time to avoid the injury. On the contrary, it appears that the boy never was upon the track; that he came in contact with the car on reaching the track; and his own theory was that he passed as far forward as he went, before being struck, from behind an obstacle which obstructed his vision, and would equally have obstructed the vision of the motorman, and the evidence shows that he was at the time on a run.

It is evident that this verdict cannot stand, but the more doubtful question is presented as to whether the first request of defendant should have been given. In my opinion, upon this record, it should have been. See *Ecliff* v. *Railway Co.*, 64 Mich. 196. The plaintiff himself testified that this boy had intelligence enough to appreciate the danger. He placed the boy on the stand, and he so testified. The evidence clearly shows that there was nothing except this wagon and the east-bound car to obstruct the vision. Witnesses for the plaintiff state that, if the boy had looked in the direction of the car, he could have seen it. It was but common prudence in crossing such a thoroughfare to look, not only for the car, but for any vehicle which might be coming. Injury

would have occurred from collision with an ordinary wagon just as surely as from running into this car, and, from the testimony of the lad himself, he had intelligence enough at the time to know this. Why, then, should it be left for the jury to say that he had not?

Error is assigned upon certain language employed by plaintiff's counsel upon the argument, but, as the case is reversed upon other grounds, it is not necessary to consider the objection at length. We find in the record language which ought not to have been employed, but, as it is not likely to be repeated, it is not necessary to quote it.

Judgment will be reversed, and a new trial ordered.

The other Justices concurred.