## WILDER *v.* SANCHE.

1. TRIAL—INSTRUCTIONS—MODIFICATION OF REQUESTS.

   A judgment for plaintiff will not be reversed because the court added to one of defendant's requests to charge some words of explanation which were not in themselves clear, if from the whole charge it is apparent that the jury must have correctly understood the issues.

2. SAME—WITNESSES.

   There is no error in instructing the jury that they should find for plaintiff 'or defendant, according to their belief in the witnesses, "taking them in sides," if the issues are squarely raised, and the contention of each party finds support only in the testimony of his own witnesses. *Henderson* v. *Railway Co.*, 116 Mich. 368, distinguished.

Error to Wayne; Donovan, J. Submitted April 18, 1899. Decided June 5, 1899.

*Assumpsit* by Marshall P. Wilder against Hercules Sanche upon a promissory note. From a judgment for plaintiff, defendant brings error. Affirmed.

*Flowers & Moloney*, for appellant.

*Ed. E. Kane*, for appellee.

LONG, J. This action was brought upon a promissory note of $1,000 given by the defendant to the plaintiff, and due one year after date, with interest at 6 per cent., payable semi-annually. Defendant pleaded the general issue, and gave notice thereunder that he would show that the consideration for the note had failed, and that it was without consideration, for the reason that on or about October 25, 1892, he made a contract with the plaintiff and his father by which they agreed to assign to him 220 shares of the capital stock of the Dr. Hercules Sanche Company, to be held by him until he should acquire all of the shares

of the other shareholders, and, in the event of his being unable to effect this purchase, said shares were to be returned to said plaintiff and his father, and, if defendant should acquire all the shares of the other shareholders, the said plaintiff and his father were to have the option of having said stock returned to them, or demanding payment of $1,000, and interest at 6 per cent. per annum from the date of said agreement; that at the time said agreement was made, and as a part of it, defendant gave to plaintiff and his father the note in suit, and it was not intended as an absolute promise to pay; that the defendant did not procure the stock of the other stockholders in said company, and had elected and offered to return said shares to plaintiff and his father, and had demanded the return of said note, and plaintiff and his father had refused to accept the stock and return the note. With this plea the defendant filed his affidavit that he did not make and deliver the writing in the declaration mentioned in the manner and form as the plaintiff alleges.

It appears that the company referred to in the notice was organized under the laws of New Jersey in December, 1891, for the purpose of controlling certain patents and mechanical appliances invented by defendant. Plaintiff and his father received 220 shares of the capital stock. Defendant contends that some time in September, 1892, the directors, during his absence, wrongfully voted themselves large sums of money; that, this fact coming to his attention, he arranged with certain directors to join with him to undo this action, and in some way rid themselves of the directors who had participated in that act; that action was thereafter taken by which the said resolution of the board was rescinded; that several consultations were had with parties friendly to the defendant and his interests, and that it was finally agreed that all those parties, including plaintiff and his father, should assign their stock to defendant, for the purpose of centralizing all the stock held by the friendly stockholders; that, at the time the note was given, another agreement was

made, which was signed by plaintiff, or by his father for him, under which it was agreed to return to defendant the note in suit at any time before the note was paid, if the defendant should be unsuccessful in securing all the stock of the stockholders; that he did not obtain all the stock, and offered to return plaintiff's to him, and demanded his note, which was refused; that this agreement was lost, and could not be produced on the trial.

On the other hand, the plaintiff contended that he made an absolute sale of this stock to defendant, and took his note therefor; that no such agreement as claimed by defendant was ever made, but that the only agreement made was put in writing and signed by defendant; that plaintiff held it, and produced it on the trial, and it is as follows:

"NEW YORK, November 1, 1892.

"I hereby agree to return to Mr. Marshall P. Wilder and Dr. Louis De V. Wilder, his father, the stock which they have sold to me in the Dr. Hercules Sanche Company at exactly the same price which I gave them, and at any time before my note given therefor is fully paid up, but not thereafter.

"HERCULES SANCHE."

The court below, at the close of his charge, stated to the jury:

"Now, gentlemen, * * * this case all results down to two questions, and they are just as simple as A, B, C, * * * Was the note given for stock, out and out, without any condition? If it was, the verdict is for the plaintiff, $1,302.50. Second. Was the note given with conditions that it might be given back, and the stock taken back, on the happening of conditions? If so, the verdict should be for the defendant, no cause of action."

The plaintiff had a verdict for $1,302.50. Defendant brings error.

The assignments of error all relate to the charge of the court, and the requests to charge.

In his second request, the defendant asked the court to charge:

"If you find from the evidence in this case that at the time the note sued upon was given, and at the time Exhibit 2 [the agreement signed by defendant, and above set out] was signed, another paper was signed by plaintiff, by and under which the plaintiff, or his father for him, agreed to accept from the defendant the return of the stock for which the note was given at any time before the note was paid, and you further find that the defendant offered to return the stock to the plaintiff for the note, then your verdict should be for the defendant."

It is contended that, while the court recognized in his charge the right of defendant to have this request given, yet its entire sense and meaning were destroyed by the remarks of the court in giving it.. The request was given almost word for word as drawn, but the court added:

"Now, gentlemen, that request is so long it had better be explained. What does it mean, in two lines? It means if there was a lost paper that made this a conditional note, and they took back and he got his note, you would find for the defendant, because it made a condition of it. That is what that long request means. But they put it in a good many lines,—legally, but too long."

While the explanation of the request by the court was not very. clear, yet we cannot believe the jury were misled by it, when we consider the other parts of the charge,— especially the concluding portion of it, which we have quoted.

The defendant, by his fifth request, asked the court to charge:

"The affidavit made by Hercules Sanche denying the execution of the note in suit in manner and form as declared upon was a proper affidavit to be filed in this case, under the defendant's theory of the case; for, if the papers claimed to have been signed by the defendant were signed, then the note set up in the declaration in this cause was not in manner and form the agreement made by and between the parties, and the defendant could not compel the plaintiff to prove the execution of the different papers unless such an affidavit had been filed."

This request was given in full, but counsel contend that

the effect of it was destroyed by the remarks of the court
following it; that the purpose of the request was to ex-
plain to the jury the reason for filing the affidavit, as
counsel for plaintiff on the trial sought to impress upon
the jury that the defendant had committed perjury in
making it. There is nothing in the remarks of the court
which could in any manner take away the effect of the
request as given. The court said that:

"They had a right to make this affidavit, if they be-
lieved in the lost paper and the other conditions. In order
to bring in the defense, they had to make some affidavit
substantially as stated."

But, aside from this, when the matter of the affidavit
was spoken of on the trial, the court said to counsel:

"The lawyers make up their papers in the case, and
then they ask their clients to sign them, and, if they are
any way obedient, they will sign them; and, if there is
any blunder about it, it is the lawyer who is to blame,
and not the parties."

The defendant had nothing to complain of in these re-
marks.

The court, in one part of his charge, stated to the jury:

"If you believe the plaintiff's side of the case and the
plaintiff's witnesses, taking them in sides now, then the
plaintiff has made out a case. If you believe the defend-
ant's side of the case, taking it in sides by the witnesses,
then the defendant has make out a case."

It is claimed by counsel that this was error, and the case
should be reversed for that part of the charge. In support
of this proposition, counsel cite *Henderson* v. *Railway
Co.*, 116 Mich. 368. While the language used by the court
in that case was similar to the above, and was held to be
damaging to the defendant, the reason it was so held was
that, in any view of the case, many of the facts testified
to by the plaintiff's witnesses might be true, and yet no
liability exist. That cannot be said in the present case.
Here the issue was squarely made. The defendant testi-
fied to a certain contract being made, and signed by plain-

tiff; that it was lost, but, if produced, would show that the plaintiff agreed to surrender the note when the stock was tendered back. The plaintiff testified that no such agreement was ever made, and in the final portion of the charge the court very plainly stated this issue. We think it cannot be said, under these circumstances, that the defendant's case was damaged by this charge.

There are some other portions of the charge of which complaint is made, but a reading of the whole charge, in view of the matters in controversy, convinces us that no error was committed.

The judgment will be affirmed.

The other Justices concurred.