EDWARDS *v.* FOOTE.

1. STREET RAILWAYS—COLLISION WITH VEHICLE—NEGLIGENCE—EVIDENCE.

In an action for injuries received by plaintiff from the collision of a street car with a buggy in which he was riding, it was not error to refuse to permit the conductor to state what the driver of the buggy said concerning the accident; the conversation not being within plaintiff's hearing, and it not appearing that it was at or immediately after the accident.

2. SAME—QUESTION FOR JURY.

A horse hitched to a buggy in which plaintiff was riding stumbled and fell on a street-car track, and floundered and fell again, and the buggy was struck by a car, and plaintiff was injured. It was his contention that the car was running at an unlawful rate of speed, and, also, that the motorman was negligent in not stopping it in time to prevent the

accident. The testimony as to the speed of the car, the distance it was from the buggy when the danger became apparent, and the distance it ran after the collision, was conflicting; but plaintiff testified that, when the horse first stumbled, the car was 10 to 12 rods distant, and that it ran some 9 rods after striking the buggy. *Held*, that the question of defendant's negligence was properly submitted to the jury.

3. SAME—CONTRIBUTORY NEGLIGENCE.

It was also for the jury to say whether plaintiff was negligent in not jumping from the buggy.

4. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

A motion for a new trial on the ground of newly-discovered evidence is properly denied where it is not shown that any effort was made to secure the attendance of the proposed witness at the trial; he having been within the jurisdiction of the court, and his familiarity with the circumstances involved being known to the complaining party.

Error to Jackson; Peck, J. Submitted October 25, 1901. Decided December 21, 1901.

Case by Charles K. Edwards against William A. Foote, receiver of the Jackson Street-Railway Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff brought suit to recover damages for injuries sustained in a collision with one of defendant's street cars while driving across its track. At the time of the accident, plaintiff was riding with his son-in-law, Mr. Forner. The horse they were driving was a nervous, excitable animal, and afraid of the street cars. They were seated in a low, covered carriage, with the top clear down. Forner, who was driving, sat on the right side of the vehicle. They were going north on Van Dorn street, and were in the act of crossing the street-car track on Main street when the vehicle was struck by the car. The track and pavement were wet and slippery, rendering it more difficult to stop the car than it otherwise would have been. As to the manner of the accident, the plaintiff relied solely on his own testimony. He testified:

"As we got to Main street we halted, and saw a car coming from the west, down by the depot. Believing we had ample time to cross, Forner spoke to the horse. She responded promptly, and started at a rapid pace,—between a rapid walk and a trot; a quick, nervous movement. When she got on the track she slipped and stumbled forward, falling clear down in a sort of sprawling position; that is to say, she didn't go on either side, but sprawled out. She instantly made an effort to regain her feet, and did, or practically, at least, but instantly slipped again, and, in slipping and moving ahead, she swerved to the right. We were headed north. She slipped and turned to the right in her effort to keep her feet, and went down, striking on her right side,—clear down. She instantly made an effort to get up, and struck out on her left front foot and her right front knee, and was in that position when we were struck by the car. After the first fall I noticed where the car was, and I should judge it was 10 or 12 rods west of us. I didn't see the car again until after I was thrown out. When the horse first slipped, the buggy was square across the track."

The car was coming from the left of the buggy. The horse had drawn the buggy diagonally to the right, so that the left wheel had passed beyond the reach of the car, and it struck the right wheel. Plaintiff and Mr. Forner saw the car as they came within the line of vision upon Main street from Van Dorn street. They thought they had ample time to cross, and would have crossed in safety if the horse had not slipped.

The evidence on the part of the defense is that the car was going at its ordinary rate of speed; that the motorman, as soon as he saw that the carriage and its occupants were in danger, applied the brakes, and did all in his power to stop his car to avoid the accident. The only testimony from which negligence can be inferred is the testimony of plaintiff and some others as to the speed of the car, and the distance it was from the place of the accident when approaching, and the distance therefrom when it was stopped. The case was submitted to the jury upon the theory that the car was running at an unlawful rate of speed, and that the motorman did not use the

efforts that he should have used to stop the car and avoid the accident. Plaintiff recovered verdict and judgment.

*Wilson & Cobb*, for appellant.

*Blair, Smith & Townsend*, for appellee.

Grant, J. (*after stating the facts*). 1. The first error alleged is upon the ruling of the court in refusing to permit a witness for the defendant to testify to what Mr. Forner, the driver, said after the accident. The witness was the conductor of the car. The question arose in this way:

"*Q*. Did you have any talk or hear any talk between the driver and any one after the accident occurred?

"*A*. Yes, sir.

"*Q*. What, if anything, did the driver of the vehicle say with reference to his getting across the track at that time in front of the car?

"*A*. I couldn't say that those statements were made in Edwards' presence. I don't think that Edwards could have heard the statement."

The question was then objected to, and the objection sustained. We think the ruling of the court was correct. The evidence did not show that the conversation occurred at or immediately after the accident. Evidently Edwards had left. It was not a part of the *res gestœ*. *Mabley* v. *Kittleberger*, 37 Mich. 360; *Lane* v. *Bryant*, 9 Gray, 245 (69 Am. Dec. 282).

2. We think the question of negligence was properly submitted to the jury. The distance of the car from the place of the accident when it appeared that there was danger of a collision, and the distance it went after the collision, were controverted questions of fact. The car was going upgrade. The speed of the car depended largely upon these distances. The plaintiff testified that, when the horse first stumbled, he looked at the car, and, in his judgment, it was between 10 and 12 rods distant. While common experience teaches every one that an opinion under these circumstances is not very reliable, still, that was a question for the jury, in connection with all the

other testimony in the case upon the matter of speed and distances. The question of liability is a very close one, but we think there was sufficient conflict of evidence to make it a question for the jury.

3. It is also urged that plaintiff was guilty of contributory negligence in not jumping from the buggy when he saw the car approaching. It was, of course, his duty to do this if he saw the danger, and had the time and opportunity to do so. The difficulty in jumping from the carriage, with the horse floundering about and jumping in the effort to regain her feet and run on, is apparent. We do not think that plaintiff, as a matter of law, was required to take the risk; nor do we think the evidence conclusively shows that he fully comprehended the situation, so that he was guilty of negligence in not jumping from the carriage. It was a question of fact for the jury to determine whether, under the circumstances, it was his duty to do so, and this was left fairly to them.

4. Mr. Forner, plaintiff's son-in-law, was not called by him as a witness. It appeared upon his cross-examination that Mr. Forner had been interviewed by plaintiff's attorneys, and after such interview they decided not to call him as a witness. Upon a motion for a new trial, defendant produced Mr. Forner, and examined him before the court. His testimony was material to the defense, and was contradictory to that of the plaintiff. The court, however, denied the motion for a new trial upon the ground that defendant had not exercised due diligence in procuring Mr. Forner as a witness at the trial. We see no reason to interfere with this ruling. Mr. Forner was within the jurisdiction of the court, and, if it had been necessary, counsel might have applied for a delay in the trial to subpœna him; but it does not appear that any such effort was made, or, in fact, that any effort was made to produce him. For this reason we must decline to interfere with the ruling of the court.

The judgment is affirmed.

Montgomery, C. J., Moore and Long, JJ., concurred with Grant, J. Hooker, J., concurred in the result.