PLANT *v.* HERATY.

STREET RAILWAYS—INJURY TO TRAVELER—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

> Where plaintiff, while driving across defendants' street railway, was struck and injured by an east-bound car, which he had seen standing 100 feet west of the street intersection when he was at the sidewalk line, and which afterwards

approached the crossing without ringing a bell as required
by a city ordinance, the question of his contributory negli-
gence was for the jury; it appearing that his hearing was not
impaired, and that his attention was wholly taken up by a
car coming from the east on a parallel track, which fact could
have been seen by the motorman of the east-bound car.
GRANT, J., dissenting.

Error to Bay; Shepard, ᴜ. Submitted October 7,
1902. (Docket No. 2.) Decided November 18, 1902.

Case by Daniel Plant against Michael P. Heraty and
John C. Weadock, receivers of the Bay Cities Consoli-
dated Street-Railway Company, for personal injuries.
From a judgment for defendants on verdict directed by
the court, plaintiff brings error. Reversed.

*De Vere Hall,* for appellant.

*T. A. E. & J. C. Weadock,* for appellees.

MOORE, J. The plaintiff, a farmer, while driving north
on Saginaw street, crossing Center street, in Bay City,
was struck by a street-railway car. This suit was brought
to recover damages for the injuries he received. After
the witnesses for plaintiff had been sworn, and before any
proof had been offered by defendants, the circuit judge
directed a verdict in favor of defendants. The case is
brought here by writ of error.

The city ordinance, under which the street cars were
allowed to run, required the cars to be equipped with a
suitable alarm bell, which was to be rung at least 50 feet
from each street crossing as the car approached the cross-
ing. Center street runs east and west. Saginaw street
runs north and south. It is the claim of plaintiff that he
was driving a gentle horse attached to an open, light
wagon, in which he was sitting upon an inverted bushel
basket; that he stopped near where the south sidewalk on
Center street crosses Saginaw street, to enable a person
who was riding with him to alight; that, before starting

his horse north, he looked and saw one of defendants' cars about 100 feet west of Saginaw street, standing still; that at the same time he saw a suburban car to the east, which was coming west, ringing its bell; that, believing he had ample time to cross Center street, he started his horse for the purpose of doing so; that for a moment he doubted whether he had time to pass ahead of the suburban car, and slackened the pace of his horse, but concluded he had ample time to do so, and urged it forward; that his attention was wholly occupied by the suburban car after he started to cross the street, and that, if the motorman had been observant, he would have noticed the fact. The plaintiff crossed the track upon which the suburban car was running safely. In the meantime the car which was standing west of Saginaw street started east, and it is the claim of plaintiff the motorman gave no warning of the approach of the car, and that plaintiff had no reason to suppose he was in danger from it until his wagon was struck by it, and he was thrown as high as the car, and suffered very severe injuries.

If the motorman ran his car east under the circumstances, and without any warning being given by him, as indicated by the testimony of the witnesses for plaintiff, he was negligent, and the plaintiff should be allowed to recover unless he is precluded from doing so by his own act. The case is not free from doubt. It is near the border line. We think, however, the testimony was for the jury, and that it cannot be said, as a matter of law, that plaintiff was guilty of such negligence as to preclude him from recovering. His attention was occupied more or less by the approaching suburban car, which was giving warning of its approach by the ringing of its bell. Before he started across the street he saw that the car to the west was standing still. It was the duty of the person in charge of it to signal its approach to the crossing by the ringing of the bell. The testimony discloses plaintiff's hearing was not impaired. The motorman could see the plaintiff, and could see that his attention was occupied by

the suburban car. We think the case falls within the following cases: *Rouse* v. *Railway*, 128 Mich. 149 (87 N. W. 68); *Edwards* v. *Foote*, 129 Mich. 121 (88 N. W. 404); *Tunison* v. *Weadock*, 130 Mich. 141 (89 N. W. 703), and the cases cited therein.

Judgment reversed, and new trial ordered.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J.

GRANT, J. (*dissenting*). I think the learned circuit judge properly directed a verdict, and for the reasons stated in his instructions. Plaintiff knew that there were two tracks; that cars were liable to run each way at any moment; that stops were brief, for the purpose of letting passengers on and off; and that, if the car was at the time standing still, it was liable to start any moment. He kept his attention fixed on the moving car coming from the east. He had stopped about 40 feet from the track, near the sidewalk, to let his companion get out. He then started to cross, but, seeing the car approaching from the east, he "pulled up, and pretty near stopped again;" then, thinking he had plenty of time to avoid this car, he drove on. He admitted that a glance to the left would have shown him the other car approaching, and that, if he had so glanced, he could and would have avoided the accident. There is no claim that the car was going beyond the rate of speed fixed by the ordinance, to wit, six miles per hour. The car stopped only momentarily at the switch, about 100 feet away, when evidently plaintiff saw it. The only witness upon the car (Judge Maxwell) testified that he was not sure whether it just slowed up or stopped.

It was as much the duty of the plaintiff to look out for himself, and watch the car, as it was the duty of the motorman to watch the plaintiff. Their obligations were mutual. If both violated such obligations, and acted negligently, neither can recover for injuries received. The motorman had the right to assume that the plaintiff,

riding in plain sight, would and did see the car, and was under no obligation to bring his car to less than the allowed rate of speed, or to attempt to stop it, until he saw that plaintiff was taking no heed, and was about to ride into danger. If motormen were obliged to assume that every one they saw approaching the track upon a public highway did not see it, and bring their car to a stop, the demands of public travel could not well be met. We so held in a case where the ordinance required street cars to stop when crossing the track of another road. It was there held that the motorman, who had made the stop required by the ordinance, and attempted to cross another road, whose car was approaching 150 to 200 feet away, and did not make the required stop, was not guilty of contributory negligence. We there said:

"If he must wait before he can go forward until he knows that the approaching car will stop, he will fail to meet the demands of modern street-railway traffic." *Becker* v. *Railway Co.*, 121 Mich. 580, 586 (80 N. W. 581).

For the same reason a motorman cannot be required to check his car to less than a lawful rate of speed upon the assumption that a person, driving in his vehicle, does not see him. I think the case is expressly ruled by the following decisions of this court: *McCarthy* v. *Railway Co.*, 120 Mich. 400 (79 N. W. 631); *Hilts* v. *Foote*, 125 Mich. 241 (84 N. W. 139); *Bennett* v. *Railway Co.*, 123 Mich. 692 (82 N. W. 518); *Henderson* v. *Railway Co.*, 116 Mich. 368, 374 (74 N. W. 525); *McGee* v. *Railway Co.*, 102 Mich. 107 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Doherty* v. *Railway Co.*, 118 Mich. 209 (76 N. W. 377, 80 N. W. 36). In *Hilts* v. *Foote* we said:

"Thompson [the driver] had ample time to look both west and east in time to see the approaching car, and stop so as to avoid the accident. It was his duty to do this."

It was equally the duty of the plaintiff in this case to do likewise. He had no right to assume either that the

car would stand still until he had crossed, or that the motorman saw that he did not intend to stop, but to drive across, regardless of consequences.

. The judgment should be affirmed. ·